UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

OLIVIA M.,                                )
                                          )
          Plaintiff                       )
                                          )
v.                                        )          2:20-cv-00441-GZS
                                          )
KILOLO KIJAKAZI, Acting Commissioner      )
of Social Security,                       )
                                          )
          Defendant                       )

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the July 1, 2019 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 11-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R.

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

§ 404.1520.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of depression, Ehlers-Danlos Syndrome, anxiety, attention deficit hyperactivity disorder (ADHD), fibromyalgia, and post-traumatic stress disorder (PTSD). (R. 17.)  The ALJ further found that despite her impairments, Plaintiff has the residual functional capacity (RFC) to perform light work except that Plaintiff may occasionally lift and carry 20 pounds and frequently carry 10 pounds; she can sit, stand and walk for six hours each in an eight-hour workday, and can frequently climb ramps and stairs, stoop, kneel, crouch and crawl, and has no limitation balancing; she can understand, remember and carry out simple and routine instructions for two-hour intervals over the course of an eight-hour workday and 40 hour workweek, and can tolerate occasional interaction with the general public and adapt to routine changes in the work environment.  (R. 20.)

Based on the RFC finding, Plaintiff's work experience, and the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform substantial gainful activity existing in the national economy, including representative occupations of housekeeper, cafeteria attendant, hand packager,[2] assembler, and inspector. (R. 27-28.) The ALJ determined, therefore, that Plaintiff was not disabled.

### STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record

---

[2] The vocational expert testified that Plaintiff could perform two separate hand packager positions listed in the Dictionary of Occupational Titles (DOT), DOT Nos. 920.687-082 and 737.587-010.  (R. 61-62.)

contains evidence capable of supporting an alternative outcome.  *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

DISCUSSION

Plaintiff argues that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence, and that the ALJ's determination that Plaintiff can perform jobs which exist in the national economy in significant numbers is not supported by reliable vocational evidence.

**A.  RFC Assessment**

In December 2017, state agency psychologist Mary Burkhart, Ph.D., determined that the record evidence supported the diagnoses of depression, anxiety and ADHD, but noted that Plaintiff presented to her mental health providers with intact attention, concentration, understanding, and memory.  Dr. Burkhart concluded that Plaintiff could focus with ADHD medication, adapt to daily living, and interact with coworkers and supervisors, but should not have frequent contact with the public.  (R. 74, 76-77.)  In April 2018, after reviewing the updated record, state agency psychologist Brian Stahl, Ph.D., concurred with Dr. Burkhart's assessment.  (R. 88, 92.)  The ALJ gave the opinions

"significant persuasive value" because the opinions were generally supported by the objective medical evidence, which provided little support for a finding of impairments that interfered with Plaintiff's day to day functioning.  (R. 25.)

In a medical source statement in July 2018, Plaintiff's treating psychiatrist, Richard Nilson, M.D., found Plaintiff to have marked limitations in her ability to adapt and manage herself and in her ability to concentrate, persist and maintain pace. (R. 790-91.)  He wrote that given her diagnoses (which he listed as major depressive disorder, PTSD, ADHD, and generalized anxiety disorder), "it is very difficult for Plaintiff to focus on tasks for any length of time," and "difficult for her to be around people and interact with those she does not know." (R. 791.)  He further stated that Plaintiff would be absent from work more than four days each month.  (*Id*.)

The ALJ found Dr. Nilson's opinions to be of "little persuasive value," noting that Dr. Nilson failed to explain his opinions with reference to the medical record, and that the overall record did not support the degree of impairment Dr. Nilson found.  (R. 25.)  She observed that Dr. Nilson's treatment records and the records of other providers showed a reported anxious and depressed mood but did not reflect significant abnormal mental status findings.  (R. 24.)  The ALJ further explained that there was no evidence of inpatient treatment or a significant medication regimen for mental health issues, that Plaintiff reported that she did not feel she needed more than 30 minutes of counseling every two weeks, that Plaintiff exhibited clear and organized speech and thought processes, that she showed no evident self-destructive or aggressive impulses, and that periods of slight exacerbation in symptom severity generally appeared to be associated with conflicts with

her mother, followed by a return to baseline levels of functioning.  (*Id.*)

Plaintiff argues that contrary to the ALJ's assertion, Dr. Nilson's opinion is consistent with other evidence in the record.   Regardless of whether Dr. Nilson's opinion might be consistent with certain portions of the record, the ALJ identified  some legitimate conflicts between Dr. Nilson's opinion and the record.  "[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts." *Rodriguez*, 647 F.2d at 222.  In the assessment of the conflicts, the ALJ supportably discounted Dr. Nilson's opinion and found other evidence more persuasive.

Plaintiff also argues that the state agency psychological consultants' assessments are not "opinions" under the relevant regulations, and thus Dr. Nilson's opinion is the only mental health opinion in the record.  Plaintiff contends the ALJ impermissibly interpreted raw medical data to reach his conclusions.  While the current regulations describe the determinations of state agency medical and psychological consultants as "prior administrative findings," 20 C.F.R. § 404.1513(a)(5), the agency consultants are qualified to render medical opinions and "'this court has frequently held that state-agency reviewers' opinions may be sufficient to support an assigned RFC.'" *Amanda C. v. Saul*, No. 1:19-cv-JAW, 2020 WL 5106744, at *4, (D. Me. Aug. 31, 2020), (*aff'd*, Nov. 24, 2020) (quoting *Gagnon v. Colvin*, No. 2:13-cv-00213-NT, 2014 WL 3530629, at *3 (D. Me. July 15, 2014)); *see also Powers v. Barnhart*, No. 04-86-P-C, 2004 WL 2862170, at *2 (D. Me. Dec. 13, 2004); *Larck v. Barnhart*, No. 02-112-BW, 2003 WL 22466173, at *2 (D. Me. Oct. 31, 2003) (*aff'd*, Dec. 15, 2003). The ALJ can permissibly rely on the prior

administrative findings by state agency consultative experts.  Plaintiff's challenge to the ALJ's reliance on the assessments of state agency consultants, therefore, is unconvincing.

Plaintiff further argues that remand is required because the RFC assessed by the ALJ differs from the RFC assessments of Drs. Burkhart and Stahl.  Plaintiff notes that neither state agency consultant included PTSD among Plaintiff's severe impairments nor found any adaptation limitations, whereas the ALJ found Plaintiff's PTSD to be a severe impairment and Plaintiff to have moderate adaptation limitations. (R. 17, 19.)  In her RFC, the ALJ included a restriction to simple and routine instructions for two-hour intervals, and she found that Plaintiff could adapt to routine changes in the work environment.  (R. 20.)  Even if the ALJ gave Plaintiff the benefit of the doubt and included restrictions more favorable to Plaintiff than the restrictions assessed by the state agency experts, the ALJ's RFC finding was not error. *Kristina D.B. v. Berryhill*, No. 18-cv-00088-JHR, 2019 WL 1407407, at *4 (D. Me. Mar. 28, 2019); *see also Lee v. Berryhill*, No. 2:17-cv-00040-JHR, 2018 WL 793595, at *5 (D. Me. Feb. 8, 2018) (ALJ can give the claimant the "benefit of the doubt" and recognized limitations in the RFC finding beyond those expressed in an opinion that the ALJ might otherwise rely on as substantial evidence of a less restrictive RFC); *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *3 (D. Me. Jan. 5, 2015) ("A claimant may not obtain a remand on the basis of an RFC that is more favorable than the evidence would otherwise support.").

## B.  Vocational Evidence

At step 5 of the evaluation process, the Commissioner has the burden to establish that the jobs a claimant can perform exist in the national economy in significant numbers,

giving particular attention to the claimant's age, education, work experience, and RFC.  20 C.F.R. § 404.1520(a)(4)(v), (g)(1); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 7 (1st Cir. 1982).  This burden is typically addressed through a combined reliance on the Medical-Vocational Guidelines, 20 C.F.R. Part 202, Subpart P, Appendix 2, and the testimony of a vocational expert, who is asked to consider one or more hypothetical RFC findings. *Goodermote*, 690 F.2d at 7; *Arocho v. Sec'y of HHS*, 670 F.2d 374, 375 (1st Cir. 1982). The Supreme Court noted that when offering such testimony, vocational experts "may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152-53 (2019) (quoting SSR 00-4p, 65 Fed. Reg. 75760 (2000)).  The Court further observed that the sufficiency of the evidence threshold necessary to support an ALJ's factual determinations, including the assessment of vocational expert testimony, "is not high."  *Id.* at 1154.

At the hearing before the ALJ, when presented the RFC hypothetical that was ultimately adopted by the ALJ, the vocational expert (VE) identified three representative jobs Plaintiff could perform: housekeeper, Dictionary of Occupational Titles (DOT) #323.687-014, with 600,000 such jobs nationally; cafeteria attendant, DOT #311.677-010, with 210,000 jobs nationally; and hand packager, DOT #920.687-082, with 190,000 jobs nationally.  (R. 60-62.)  All the jobs would be performed at the light exertional level and are unskilled.  (R. 61.)  The ALJ then presented a second, more limited hypothetical, which the VE testified would allow for work at the sedentary exertional level.  (R. 61-62.)  The VE testified that some representative jobs at that level would be assembler, DOT #706.684-

030, with 80,000 jobs nationally; hand packager,[3] DOT #737.587-010, with 95,000 jobs nationally; and inspector, DOT #669.687-014, with 140,000 jobs nationally.

Subsequently, Plaintiff objected to the VE's testimony as unreliable (R. 298-99) and submitted an affidavit from vocational consultant David Meuse.  (R. 300-01.)  Mr. Meuse challenged the VE's testimony regarding the number of jobs for the three sedentary positions.  He did not address the job numbers for the light exertional level positions.

 Plaintiff contends the ALJ did not properly assess the vocational evidence provided by Mr. Meuse.  While an ALJ must consider the contrary evidence submitted by Plaintiff, "an ALJ need not necessarily identify weaknesses in a competing VE's post-hearing affidavit in order to credit the testimony of the VE present at hearing." *Brendon B. v. Saul*, No. 1:20-cv-00123-JDL, 2021 WL 1922935, at * 6 (D. Me. May 12, 2021).  In this case, the ALJ acknowledged Mr. Meuse's challenge to the vocational expert's testimony and then explained why she found the VE's testimony to be reliable.  The ALJ was not required to do more.[4]

Plaintiff also argues that the ALJ erred in relying on the VE's testimony at step 5 because the VE's methodology for determining job numbers was unreliable. The ALJ

---

[3] This position is distinct from the hand packager job the VE identified in response to the first hypothetical. The hand packager job identified in response to the first hypothetical is DOT #920.687-082.

[4] Even if the ALJ were required to address specifically the difference in the number of jobs identified by the VE and the number of jobs identified by Mr. Meuse, Plaintiff's argument would fail.  Mr. Meuse challenged the number of sedentary jobs identified by the VE in response to a more restrictive hypothetical RFC than the RFC the ALJ adopted.  He did not directly challenge the numbers identified by the VE for the RFC the ALJ assessed.  As explained herein, the VE's testimony that Plaintiff could perform jobs matching the RFC limitations assessed by the ALJ (housekeeper, cafeteria attendant and hand packager), and that the number of available jobs for the positions (600,000, 210,000 and 190,000 respectively) is supported by substantial evidence.

acknowledged but overruled Plaintiff's objection to the VE's testimony:

> The [VE] has professional knowledge and experience in job placement…. Vocational experts may rely on a number of sources in their testimony. The [SSA] has taken administrative notice of reliable job information available from various governmental and other publications, including the Dictionary of Occupational Titles, county business patterns, census reports, occupational analyses, and the Occupational Outlook Handbook …. Notably, the current matter has been conducted in accordance with the Agency's rules and regulations. Further, though not bound by the testimony, an [ALJ] must weigh the opinion of a [VE] along with the other evidence of record. In the current instance, based on careful consideration of the totality of the record, I find the testimony of the [VE] conforms to the rules and regulations of the [SSA] and is therefore accepted. Accordingly, the [VE]'s job information is found to be reliable.

(R. 28.)

When questioned by Plaintiff's counsel about her methodology in deriving the job numbers, the VE testified:

> I start with the job numbers, as published by the U.S. Bureau of Labor Statistics. Those numbers are published by groups of occupations. I then need to break down those numbers, based on my own knowledge of how those jobs are performed in the national economy. And by that, I need to break them down, in terms of skill and exertional level.

(R. 64.) The VE testified that the outcome of her process is her "estimate for specific jobs," which she identified in her testimony. (R. 65.) When asked whether she was dividing the total number of jobs published by Bureau of Labor Statistics (BLS) for specific groups by the number of subgroups, she responded:

> No…. So you have the U.S. Department of Labor groups … and those groups have individual job titles. The job titles are different group to group, first of all … and the job titles – for example, within a particular group, one – … might be a common job and the other's a more obscure job. So that's where I've got to try to estimate the numbers for those specific jobs and I do believe my numbers are conservative for this reason, I have to estimate. And then for each individual job title, I have to estimate the jobs for the skill and

9

exertional level because they're – for most job titles, there is a range – … the job is not performed the same in every employment setting, so again, you have to – … whatever – … the exertional level is assigned to the job that's like the top of the bell curve, and so you have to, just, again, further estimate what the numbers would be for the skill level and exertional level for that particular job.

(R. 65-66.)

The VE agreed that the overall estimate of job numbers for a specific job title was mostly the product of her experience, based on the numbers published by the BLS. (R. 66.) She further testified that her estimation is typically lower than the published numbers. (*Id*.) She explained that some job descriptions in the DOT are outmoded, and that, particularly for manufacturing jobs, she looks at a broader range of jobs. (R. 66-67.) The VE also testified that it would be difficult to state with certainty an estimate of the number of jobs strictly for the specific DOT code that she cited when asked to provide representative jobs Plaintiff could perform. (*Id*.)

Plaintiff cites this Court's decision in *St. Pierre v. Astrue*, No. 1:10-cv-104-JAW, 2010 WL 5465635 (D. Me. Dec. 29, 2010) (*aff'd*, Jan. 19, 2011), in support of her argument that the VE's testimony does not adequately support the job numbers she supplied. In *St. Pierre*, the VE testified that the job numbers he provided for each position were derived from the job numbers for the larger category of jobs to which that position belonged, and that he could not break out the numbers further. 2010 WL 5465635, at *2. The Court remanded the matter, relying in part on the Court's reasoning in *Clark v. Astrue*, No. 09-390-P-H, 2010 WL 2924237 (D. Me. July 19, 2010) (*aff'd*, Aug. 9, 2010). In *Clark*, the VE testified that the jobs numbers he provided were based on "*groups of jobs* of differing

skill and exertional levels that happened to contain the three specific jobs." 2010 WL 2924237, at *3 (emphasis in original). The *St. Pierre* Court noted that the same was true in its case. 2010 WL 5465635, at *2.

Here, however, the VE made clear that she derived her numbers for an occupation by breaking the groups of jobs down by skill and exertional level, thereby not combining job numbers of positions with different skill and exertional levels. (R. 64.) She testified that for this reason, her numbers are conservative when compared to the published numbers. (R. 65-66.) This Court's reasoning in *St. Pierre*, therefore, does not require remand.

Plaintiff also does not point to any reliable evidence that would suggest the numbers the VE provided for the light exertional level jobs are inflated. Furthermore, the VE plainly testified that the job number estimates she provided were based on her knowledge and experience. (*See* R. 64, 65.) It is a "well-established legal principal that an expert's knowledge and experience are proper bases for the expert's opinion, [which also] applies to a vocational expert's opinion regarding the number of jobs available in the national economy." *Travis H. v. Saul*, No. 1:19-cv-00374-NT, 2020 WL 5819535, at *5 (D. Me. Sept. 30, 2020) (*aff'd*, Nov. 20, 2020). In sum, the ALJ did not err when the ALJ relied on the VE's testimony at step 5.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 20th day of October, 2021.